

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-07-184-CR

WARREN BRAZIEL                                                APPELLANT

V.

THE STATE OF TEXAS                                                STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. INTRODUCTION

Appellant Warren Braziel appeals his conviction for aggravated assault with a deadly weapon. A jury found Braziel guilty and assessed his punishment at ten years' confinement. In a single point, Braziel challenges the factual sufficiency of the evidence to support his conviction. We will affirm.

---

[1] *See* TEX. R. APP. P. 47.4.

## II. BACKGROUND FACTS

On the evening of August 7, 2006, Roy Gordon and his girlfriend, Monnette Jenkins, attended a party at an apartment complex in Dallas. Gordon, who was carrying Monnette's cell phone, received two or three calls from Braziel on Monnette's cell phone. Braziel asked about Monnette, who was his former girlfriend, wanting to know where she was and why Gordon was with her. Gordon asked Braziel why he kept calling Monnette's cell phone because Braziel and Monnette's relationship was over. Gordon described Braziel as "mad" and testified that Braziel threatened him with the statement: "I['ve] got something for you, partner." Gordon did not receive any further calls from Braziel on Monnette's cell phone.

Gordon and Monnette left the party early the next morning around 1:30 a.m. Gordon's cousin, Bentley Jenkins, agreed to drive Monnette's two-door Honda back to the home of Joyce Jenkins, Monnette's mother. Gordon and Monnette sat in the backseat, with Gordon behind the passenger's seat and Monnette behind the driver's seat. Both Gordon and Monnette fell asleep during the drive from Dallas to Fort Worth.

After Bentley pulled into Joyce's driveway, Monnette woke up Gordon and told him that Braziel was there. Gordon heard the passenger-side door opening, saw that Braziel was the person opening the door, and heard Braziel

2

threaten to kill him. Gordon testified that he saw a .380 automatic in Braziel's hands and that he heard Braziel say, "Nigga, I'll kill you," before Braziel fired a shot through the rear, passenger-side window. The bullet missed Gordon and exited through the bottom, middle area of the back window.[2] The shattered glass from the bullet caused cuts to both Gordon and Monnette, who were both still in the backseat when Braziel fired the gun.

Bentley exited the car and ran into Joyce's home. Joyce came to the front porch and saw the passenger door open and Braziel standing next to the door. She heard Braziel say, "I'm going to kill you." She told Braziel to leave and went inside and called the police. When she came back out, she noticed a handgun in Braziel's hand and saw him talking to Monnette. Braziel fled the scene before the police officers arrived.

Braziel testified and contradicted portions of the above evidence. First, although he admitted that he had argued with Gordon during the cell phone calls, Braziel denied saying, "I've got something for you, partner." Second, he testified that he went to Joyce's house to speak with Monnette, not to confront Gordon. Third, Braziel claimed that he had planned to shoot the gun

_____

[2] The crime scene investigator, Officer David Ukel, testified that the bullet likely entered through the right, rear window and exited through the rear windshield.

3

in the air to inform Gordon that he was armed, but the weapon accidentally discharged while he was approaching Monnette's vehicle.[3] Fourth, he testified that the bullet shot through the "passenger side in the back."[4] Lastly, Braziel testified that, while holding his gun, he never said to Gordon, "I'm going to kill you," but instead stated, "I ought to kill you." He did not, however, deny that "I ought to kill you" is threatening language, which he said while exhibiting a gun.

After hearing the above testimony, the jury found Braziel guilty of aggravated assault with a deadly weapon and assessed his punishment at ten years' confinement. The trial court sentenced him accordingly. This appeal followed.

### III. STANDARD OF REVIEW

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party.

---

[3] Braziel testified that he brought the gun to protect himself from Gordon, but he admitted on cross-examination that he did not know that Gordon was in the car. On cross-examination, the prosecutor also brought out that although Braziel claimed he was going to fire the gun in the air to warn Gordon that he was armed, he also claimed he did not know Gordon was in the car.

[4] Braziel's testimony on this point, however, is a little unclear because he pointed out the entry and the exit of the bullet on exhibits shown to him during his testimony, and we cannot discern where he pointed from the record.

4

*Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); *Drichas v. State*, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005). We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the fact-finder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the fact-finder's determination is manifestly unjust. *Watson*, 204 S.W.3d at 414–15, 417; *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, though legally sufficient, contradicts the verdict. *Watson*, 204 S.W.3d at 417.

In determining whether the evidence is factually insufficient to support a conviction that is nevertheless supported by legally sufficient evidence, it is not enough that this court "harbor a subjective level of reasonable doubt to overturn [the] conviction." *Id*. We cannot conclude that a conviction is clearly wrong or manifestly unjust simply because we would have decided differently than the jury or because we disagree with the jury's resolution of a conflict in the evidence. *Id*. We may not simply substitute our judgment for the fact-finder's. *Johnson*, 23 S.W.3d at 12; *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). Unless the record clearly reveals that a different result

is appropriate, we must defer to the jury's determination of the weight to be given contradictory testimonial evidence because resolution of the conflict "often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered." *Johnson*, 23 S.W.3d at 8. Thus, we must give due deference to the fact-finder's determinations, "particularly those determinations concerning the weight and credibility of the evidence." *Id*. at 9.

An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant's complaint on appeal. *Sims v. State*, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

### IV. FACTUALLY SUFFICIENT EVIDENCE OF AGGRAVATED ASSAULT

Braziel couches his sole point as a challenge to the factual sufficiency of the evidence supporting his conviction for aggravated assault with a deadly weapon. Braziel argues that, while the evidence in the record is *legally* sufficient to convict Braziel of aggravated assault, it is factually insufficient because the overwhelming evidence establishes that he is guilty only of the lesser included offense of deadly conduct.

The trial court charged the jury on the lesser included offense of deadly conduct and instructed the jury as follows:

Now, if you find from the evidence beyond a reasonable doubt that on or about the 7th day of August 2006, in Tarrant County, Texas, the defendant, Warren Braziel, did intentionally or knowingly threaten imminent bodily injury to Roy Gordon and the defendant did use or exhibit a deadly weapon during the commission of the assault, to-wit: a firearm, then you will find the defendant guilty of the offense of aggravated assault.

Unless you so find from the evidence beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will find the defendant not guilty of aggravated assault as charged in the indictment and you will next consider the offense of deadly conduct.

Now if you find from the evidence beyond a reasonable doubt that on or about the 7th day of August 2006, in Tarrant County, Texas, the defendant, Warren Braziel, did knowingly discharge a firearm at or in the direction of one or more individuals, then you will find the defendant guilty of the offense of deadly conduct.

Unless you so find from the evidence beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will find the defendant not guilty.

Thus, the jury charge properly did not allow the jury to reach the lesser included offense of deadly conduct if it found Braziel guilty of aggravated assault with a deadly weapon. *See generally Hall v. State*, 225 S.W.3d 524, 536 (Tex. Crim. App. 2007) (explaining submission of lesser included offense instruction); *Salinas v. State*, 163 S.W.3d 734, 741 (Tex. Crim. App. 2005) (same); *Rousseau v. State*, 855 S.W.2d 666, 672–73 (Tex. Crim. App.) (same), *cert. denied*, 510 U.S. 919 (1993). Because the jury found Braziel guilty of aggravated assault with a deadly weapon and did not reach the lesser included

7

offense of deadly conduct, we will review the record to determine whether factually sufficient evidence exists to support the jury's finding.

A person commits aggravated assault when he or she intentionally or knowingly threatens to cause bodily harm to another while exhibiting a deadly weapon. TEX. PENAL CODE ANN. §§ 22.01(a)(2), 22.02(a)(2) (Vernon Supp. 2007).

In support of his factual sufficiency challenge—i.e., his contention that the overwhelming evidence establishes only deadly conduct—Braziel relies heavily on his trial testimony in arguing that he had no intention of shooting Gordon and that he had brought the gun with him to Joyce's house only in case he needed to defend himself. Braziel also relies upon his testimony that he meant to discharge the weapon in the air as a warning to Gordon and that this is confirmed by the fact that Gordon was "not injured." Finally, Braziel points out that because of how close he was to the vehicle, he could have killed Gordon if he had wanted to.

We must, however, give due deference to the fact-finder's determinations, "particularly those determinations concerning the weight and credibility of the evidence." *Johnson*, 23 S.W.3d at 9. And here, the jury was free to discount Braziel's testimony and to believe the testimony of both Gordon and Joyce that Braziel threatened to kill Gordon as he held a gun in his hand.

8

In fact, Braziel himself admitted that he threatened Gordon with the statement, "I ought to kill you," while he exhibited a deadly weapon. Additionally, Braziel actually discharged his gun, shattering the rear-side and back windows. And finally, Braziel fled before police arrived. The Texas Court of Criminal Appeals has held that escape, flight, and attempt to escape are always admissible as a circumstance from which an inference of guilt may be drawn. *See, e.g., Thomas v. State*, 530 S.W.2d 834, 836 (Tex. Crim. App. 1975).

Thus, examining all of the evidence in a neutral light, favoring neither party, the evidence supporting Braziel's conviction for aggravated assault with a deadly weapon is not so weak that the fact-finder's determination is clearly wrong and manifestly unjust. Nor does the conflicting evidence—Braziel's own testimony raising the issue of deadly conduct—so greatly outweigh the evidence supporting the conviction that the fact-finder's determination is manifestly unjust. *See Watson*, 204 S.W.3d at 414–15, 417; *Johnson*, 23 S.W.3d at 11; *Burns v. State*, No. 02-04-00601-CR, 2006 WL 412973, at *1–4 (Tex. App.—Fort Worth Feb. 23, 2006, no pet.) (mem. op., not designated for publication) (holding that evidence was factually sufficient to support conviction for aggravated assault with a deadly weapon, despite appellant's contention that the shooting was accidental, because evidence

revealed that appellant said, "Well, y'all shouldn't've made me mad" and fled the scene after shooting).  We therefore overrule Braziel's sole point.

## V. CONCLUSION

Having overruled Braziel's sole point, we affirm the trial court's judgment.


SUE WALKER
JUSTICE


PANEL F:    CAYCE, C.J.; LIVINGSTON and WALKER, JJ.

DO NOT PUBLISH
TEX. R. APP. P. 47.2(b)

DELIVERED: June 26, 2008